**Joseph LEOGRANDE, Sr., Plaintiff,**

v.

**Donald LEOGRANDE, individually and as Trustee of the Windsor Fuel Co., Inc. Pension Trust and the Windsor Fuel Co., Inc. Superimposed Pension Trust, Joseph LeoGrande, Jr., individually and as Trustee of the Windsor Fuel Co., Inc. Pension Trust and the Windsor Fuel Co., Inc. Superimposed Pension Trust, Sue Ann LeoGrande, Windsor Fuel Co., Inc., A.J. Savasta, Inc., Edward M. Gordon, the Windsor Fuel Co., Inc. Pension Trust and the Windsor Fuel Co., Inc. Superimposed Pension Trust, Defendants.**

Donald LEOGRANDE, individually and as Trustee of the Windsor Fuel Co., Inc. Pension Trust and Superimposed Pension Trust, Joseph LeoGrande, Jr., individually and as Trustee of the Windsor Fuel Co., Inc. Pension Trust and Superimposed Pension Trust, Windsor Fuel Co., Inc., the Windsor Fuel Co., Inc. Pension Trust and the Windsor Fuel Co., Inc. Superimposed Pension Trust, Counter/Cross–Claimants,

v.

Joseph LEOGRANDE, Sr., Allan Bakst, and John Does 1–5, Counterclaim Defendants,

and

A.J. Savasta, Inc., Pension Parameters, Inc., and A.J. Savasta Pension Parameters of Long Island, Inc., Cross–Claim Defendants.

Allan BAKST, Cross–Claimant,

v.

Jane SAVASTA, as Executrix of the Estate of Anthony J. Savasta, deceased, Cross–Claim Defendant.

William LEOGRANDE, personally and in the right of Windsor Fuel Co., Inc., a corporation, Intervenor–Plaintiff,

v.

WINDSOR FUEL CO., INC., Joseph LeoGrande, Sr., Joseph LeoGrande, Jr. and Donald LeoGrande, each individually and as trustees of the defendants Windsor Fuel Co., Inc. Pension Trust, The Windsor Fuel Co., Inc. Superimposed Pension, The Donald and Joseph LeoGrande Irrevocable Trust and the LeoGrande Family Irrevocable Trust, Intervenor–Defendants.

No. CV–88–2564.

United States District Court,
E.D. New York.

Aug. 11, 1992.

Allan Bakst, pro se.

Ruskin, Moscou, Evans & Faltischek, P.C., Mineola, N.Y., for counterclaim defendant, counterclaimant and cross-claimant.

Joel B. Harris, Thacher Proffitt & Wood, New York City, for Donald LeoGrande and Joseph LeoGrande, Jr., individually and in their capacities as Trustees of The Windsor Fuel Co., Inc. Pension Trust and Superimposed Pension Trust, and for Windsor Fuel Co., Inc. and Sue Ann LeoGrande.

David G. Greene, Lord, Bissell & Brook, Atlanta, Ga., for Donald LeoGrande, et al., etc.

Ralph C. Prisco, Vaccaro & Prisco, Hauppauge, N.Y., for the Pension Trusts, The Windsor Fuel Co., Inc., Pension Trust and Superimposed Pension Trust.

GLASSER, District Judge:

One of the remaining parties in this action, Allan Bakst, has moved to file an amended and supplemental pleading against several of the original defendants. These defendants have moved for sanctions under Federal Rule of Civil Procedure 11. For the reasons set forth below, the motion of Bakst is denied, and the motion for sanctions is granted.

## FACTS

In 1988, Joseph LeoGrande, Sr. brought this action against his sons, Donald LeoGrande and Joseph LeoGrande, Jr. (the "trustees"), and against other defendants—among which were the Windsor Fuel Co., Inc. ("Windsor") (Windsor is the LeoGrande family business) and several pension trusts sponsored by Windsor. In this action, Joseph LeoGrande, Sr. sought to remove his sons as trustees for the defendant pension trusts. The plaintiff had earlier begun an action in the New York State Supreme Court to set aside a certain inter vivos trust in which he had placed extensive wealth. In both actions, Joseph LeoGrande, Sr. alleged extensive wrongdoing by his sons in their management of Windsor and in the discharge of their duties as trustees of the pension

trusts. The trustees, the pension trusts, and Windsor counterclaimed against Joseph LeoGrande, Sr. and against Allan Bakst. Bakst, who had long advised Windsor as a trust attorney, had not been a party to this action before the defendants asserted a counterclaim against him; Bakst himself counterclaimed against the trustees and against the pension trusts for indemnification. William LeoGrande, a brother of the plaintiff, also intervened in this action.

In February of 1991, the trustees, the pension trusts, and other parties (which included Windsor, actuaries, and pension administrators) settled their claims with the intervenor, William LeoGrande. The settling parties moved for a court order to approve·their agreement, but Joseph LeoGrande, Sr. and Bakst opposed the settlement. Bakst and the plaintiff also noticed a motion to remove the trustees from their positions in the pension trusts and to appoint a temporary receiver. At a hearing on February 15, 1991, this court approved the settlement agreement offered by the intervenor and by the other settling parties. At that hearing, this court strongly criticized Bakst's opposition to the settlement; the court observed that Bakst had no interest in the underlying pension trusts and that, for this reason, he had no standing to contest the settlement. Transcript of 2/15/91 at 29. Additionally, this court suggested that counsel for the plaintiff might wish to reconsider the motion that the plaintiff had made with Bakst to remove the trustees.[1] Id. at 26–27. That motion was subsequently withdrawn. On November 4, 1991, this court approved an agreement among the remaining parties by which they dismissed with prejudice all claims and counterclaims in this action—except those against Bakst. Accordingly, the trustees, the pension trusts, and Bakst are, apparently, the only remaining parties in this matter.

Bakst now moves pursuant to Federal Rules of Civil Procedure 15(a) and 15(d) to file an "amended and supplemental pleading" (the "proposed pleading"). He seeks to assert. counterclaims against Donald LeoGrande, Joseph LeoGrande, Jr., The Windsor Fuel Co., Inc. Pension Trust,, the Windsor Fuel Co., Inc. Superimposed Pension Trust, and Windsor (collectively, the "defendants") both under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and under the common law tort of abuse of process. Bakst asserts four causes of action against these defendants: first, that Donald LeoGrande and Joseph LeoGrande, Jr. "acquired interests, directly and indirectly, in Windsor, [a RICO enterprise], through [a] pattern of racketeering activity" in violation of 18 U.S.C. § 1962(b), proposed pleading ¶ 65; second, that Donald LeoGrande and Joseph LeoGrande, Jr. have "participated directly and indirectly in the affairs of Windsor and the [named pension trusts] through [a] pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c), id. ¶ 68; third, that Donald LeoGrande and Joseph LeoGrande, Jr. have, in violation of 18 U.S.C. § 1962(d), conspired to violate Sections 1962(b) and 1962(c), id. ¶ 71; and, fourth, that the "defendants"[2] have "misused and misapplied process ... against

1. The defendants in their opposition papers repeatedly assert that this court concluded at that hearing that Bakst lacked standing to move for the removal of the trustees and that this court directed Bakst to withdraw that motion. See Memorandum of Defendants at 5, 11, 27, 29, and 34. In fact, this court stated at that hearing that Bakst, because he had no interest in the trusts, lacked standing to challenge the settlement of the parties with the intervenor; the court also recommended to counsel for Joseph LeoGrande, Sr.—not counsel for Bakst—that the plaintiff reconsider his motion to remove the trustees. That recommendation to the plaintiff was predicated not on Bakst's lack of standing to challenge actions that affected the pension trusts but on the view of the court that a motion was probably an improper procedure by which to seek such relief.

2. Presumably, Bakst intends to indicate by the word "defendants" not only Donald LeoGrande and Joseph LeoGrande, Jr. (the only named defendants in the RICO claims) but also the Windsor Fuel Co., Inc. Pension Trust, the Windsor Fuel Co., Inc. Superimposed Pension Trust, and Windsor. On the other hand, the proposed pleading elsewhere appears to indicate that this fourth cause of action is alleged only against Donald LeoGrande and against Joseph LeoGrande, Jr. See proposed pleading ¶ 56.

Allan Bakst to obtain a collateral advantage and corresponding detriment to [him], outside the legitimate ends of the legal process used against him," *id.* ¶ 74.

In the RICO allegations of his proposed pleading, Bakst alleges a complex "pattern of racketeering activity" by Donald LeoGrande and by Joseph LeoGrande, Jr. The alleged acts of racketeering activity—acts of mail fraud under 18 U.S.C. § 1341, acts of wire fraud under 18 U.S.C. § 1343, and acts of embezzlement of pension funds under 18 U.S.C. § 664, *id.* ¶ 1—are set forth in eight different schemes. In the first such alleged scheme, Bakst claims that the trustees committed acts of mail fraud and of wire fraud with respect to creating "sham" employment of Sue Ann LeoGrande by Windsor. These racketeering acts allegedly included the mailing of fraudulent tax returns and of false tax information to the Internal Revenue Service and to the New York State Department of Taxation and Finance. *Id.* ¶¶ 9–13. The second scheme alleges that the trustees committed similar acts of mail fraud in the creation of "fictitious compensation figures" for Donald LeoGrande. *Id.* ¶¶ 14–15. The third scheme alleges fraudulent "backdating" of certain pension trust amendments; again, the alleged racketeering activity includes acts of mail fraud. *Id.* ¶¶ 16–19. The fourth scheme alleges acts of mail fraud, of wire fraud, and of pension fund embezzlement in connection with self-dealing by Donald LeoGrande as a trustee of certain Windsor pension funds. *Id.* ¶¶ 20–27. The fifth scheme sets forth allegations of embezzlement of pension trust funds by Donald LeoGrande and by Joseph LeoGrande, Jr.; Bakst also alleges acts of mail fraud and of wire fraud to further this scheme. *Id.* ¶¶ 28–37. The sixth scheme alleges predicate acts of fraud by the trustees in "other acts of self-dealing" with respect to the pension trusts. *Id.* ¶¶ 38–46. The seventh scheme alleges mail fraud in an attempt to "wrestle away from [Joseph LeoGrande, Sr.] all dominion and control of his own assets and wealth." *Id.* ¶¶ 47–50. Of these first seven schemes of alleged racketeering activity, none alleges a single act of racketeering that even arguably affected Allan Bakst.

In the eighth alleged scheme of racketeering activity, Bakst claims that the trustees and their attorneys "have attempted to cover up the illicit pattern of racketeering set forth above and have attempted to silence Allan Bakst and frustrate his defense in this matter so that information regarding their illicit acts would remain concealed." *Id.* ¶ 51. Bakst alleges that the trustees committed acts of mail fraud and of wire fraud during discovery in this action:

> As part of their cover up [of the alleged pattern of racketeering activity] in this litigation, Donald [LeoGrande] and [Joseph LeoGrande, Jr.] attempted to withhold documents which could lead to the unravelling of their fraud and which were requested in discovery by ... Bakst on several occasions. Donald and Joe Jr., through their attorneys, used the United States mail and the telephone lines to continue this fraud. From March 1989 to and including the present, Donald and Joe Jr. have, through their attorneys, written to and spoken by telephone with ... Bakst's attorneys and to the Court in an effort to withhold the documents requested. Specifically, in response to a letter motion filed by ... Bakst regarding the wrongful refusal by Donald and Joe Jr. to produce documents, their attorney sent several letters to the court and to ... Bakst's co-counsel in an attempt to withhold the documents. To date, Donald and Joe Jr. have still not produced the documents—despite being directed to do so by the Court in May 1991.

*Id.* ¶ 55. Bakst thus does not allege that the content of the mail and wire communications from the defendants to him in connection with his discovery request was in itself fraudulent; rather, he alleges that the trustees and their attorneys used the mail and the telephone to refuse his request for documents that he claims might have revealed earlier acts of fraud and of embezzlement by the trustees.

Finally, as a basis for his abuse of process claim, Bakst alleges that the trustees employed legal process "to pressure, intimidate and coerce ... Bakst ... to acquiesce [in the] usurpation of [the plaintiff's] assets by Donald and Joe Jr. and to forebear [sic] from exposing Donald's and Joe Jr.'s multiple breaches of fiduciary obligations and other fraudulent activities." *Id.* ¶ 56. The trustees are alleged to have "threatened" Bakst by telling him, through their attorney, that if he did not prevail upon the plaintiff to settle the action that the plaintiff had brought in the state court, they would make Bakst a party to this suit and thereby cause him "personal and professional embarrassment and expense." *Id.* ¶ 52. Thus, Bakst alleges, the trustees "knowingly contrived false counterclaims and cross-claims" in this action. *Id.* ¶ 53. In other words, the trustees are alleged to have "interpos[ed] ... claims" against Bakst in order "to (i) deter Joe Sr., by intimidation and coercion, from effectively exercising his rights and (ii) embarrass, harass and intimidate Allan Bakst in pursuit of that goal." *Id.*

For each of the RICO claims, Bakst alleges that "[a]s a direct and proximate result of the [alleged RICO violations], [he] has been injured in his business and his property...." *Id.* ¶¶ 66 (first claim), 69 (second claim), and 72 (third claim). On each of his four claims, Bakst seeks compensatory damages "in the amount of at least $250,000"—such damages, of course, to be trebled for the RICO claims, *id.* "wherefore" clause ¶ 1. He also seeks punitive damages in the amount of $1,000,-000.00 as well as costs and reasonable attorney's fees, *id.* "wherefore" clause ¶¶ 3–4.

## DISCUSSION

### 1. *Motion to Amend Pleading*

■ Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its own pleading "only by leave of court or by written consent of the adverse party...." When, as here, leave of the court is sought, it shall be "freely given when justice so requires." In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court directed that "this mandate is to be heeded." Thus, "[i]n the absence of any apparent or declared reason ... the leave [to amend] should, as the rules require, be 'freely given.'" *Id.* However, such countervailing reasons include "undue delay, bad faith, ... dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment...." *Id.* As to "futility", the Second Circuit has indicated that "where ... there is no merit in the proposed amendments [to a pleading], leave to amend should be denied." *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990); see also *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 683 F.Supp. 1411, 1436 (E.D.N.Y.1988), *aff'd on other grounds,* 879 F.2d 20, (2d Cir.1989). Thus, leave to amend a pleading may be denied under Rule 15(a) if the proposed amendments would fail to state a claim on which relief could be granted. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979).

Similarly, Federal Rule of Civil Procedure 15(d) provides that a court "may ... upon such terms as are just, permit [a] party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." As Bakst himself notes, the discretion of the court to permit or to deny the filing of a supplemental pleading under Rule 15(d) is similar to the discretion of the court with respect to Rule 15(a). See Memorandum of Bakst at 4; see also Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d § 1504. Thus, whether Bakst's proposed pleading is denominated as an "amended" pleading or as a "supplemental" pleading or as both, the determination as to whether he should be permitted to file and to serve that pleading is the same.

### A. The Futility of the Proposed RICO Claims

As noted above, Bakst's proposed pleading sets forth three claims under the RICO statute. He alleges that Donald Leo-Grande and Joseph LeoGrande, Jr. violated Sections 1962(b), (c), and (d) and that each of these three violations "directly and proximately" injured him. However, a close evaluation of these causes of action reveals radical deficiencies in the claims as pleaded—deficiencies that render the pleading "futile" within the meaning of *Foman v. Davis.*

Section 1962(b) declares it unlawful for any person "through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect interstate commerce." Section 1962(c) declares it unlawful for any person "employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Section 1962(d) declares it unlawful to conspire to violate Section 1962(b) or Section 1962(c). "Enterprise" is defined in 18 U.S.C. § 1961(4); "pattern of racketeering activity" is described (in part) in Section 1961(5). Among other sub-elements, a "pattern of racketeering activity" requires the commission of at least two acts of "racketeering activity." "Racketeering activity" is defined by 18 U.S.C. § 1961(1)(B) to include embezzlement from pension funds under 18 U.S.C. § 664, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and extortion under 18 U.S.C. § 1951. Section 1964(c) of Title 18 provides for a private cause of action for victims of RICO violations.

■ As to all three RICO claims, Bakst lacks standing to sue under Section 1964(c).[3] That section provides that:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in an appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The Supreme Court has recently and clearly indicated that Section 1964(c) requires proximate causation of a RICO plaintiff's injury by the alleged violation of Section 1962. *Holmes v. Securities Investor Protection Corporation,* —— U.S. ——, ——, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). Thus, in order for a plaintiff to have standing under Section 1964(c), the alleged racketeering activity of the defendant must be in "direct relation" to the alleged injury. *Id.* As the Second Circuit has articulated the same principle: "By itself, factual causation (e.g., "cause-in-fact" or "but for" causation) is not sufficient." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990). Thus, "the RICO pattern or [the racketeering] acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Id.* at 23–24.

■ Here, as to the first seven schemes of racketeering activity alleged by Bakst, not a single predicate act is alleged to have been committed either directly or indirectly against Bakst. Rather, these schemes allege that the trustees embezzled from pension funds in which Bakst has no interest, that they filed false tax returns with respect to their own income and with respect to the income of entities in which Bakst has no interest, that they made false representations to actuaries and to accountants with respect to entities in which Bakst has no interest, and that they attempted to

---

**3.** The defendants, in their opposition to Bakst's motion to amend his pleading, have adopted the position that Bakst's RICO claims are in fact ERISA claims and that Bakst lacks standing to assert any such claims that concern the integrity of the pension trusts. Bakst responds that his claims are alleged under RICO—not under ERISA. The point of the defendants is well made insofar as Bakst alleges "embezzlement from pension funds" among the predicate acts on which his RICO claims are grounded. Ultimately, however, the question of standing under ERISA is academic in that Bakst lacks standing even under RICO.

defraud Joseph LeoGrande, Sr. and others—but not Bakst himself. Bakst simply has no standing on which to raise these allegations of racketeering acts because Bakst was not the victim of any one of them. A RICO plaintiff must allege that he has been injured by conduct that constitutes a RICO violation, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), and Bakst's proposed pleading sets forth no such allegation as to these seven schemes. His pleading thus fails to set forth even a colorable claim under RICO as to the first seven alleged schemes of racketeering activity.

 Similarly, even the conduct alleged in the eighth scheme bears no direct relation to any injury to Bakst. There, Bakst claims that the trustees and their attorneys have refused to comply with his discovery requests and that they have communicated their refusals through the mail and over the telephone. Bakst does not indicate that the content of these refusals are themselves fraudulent; rather, he alleges that these refusals to comply with Bakst's discovery requests are intended to conceal the trustees' earlier acts of fraud and of embezzlement.[4] Even if Bakst's characterization of the letters and of the telephone calls made to Bakst by the trustees' attorneys is correct—that is, even if the trustees' position in this discovery dispute *is* an attempt to conceal earlier fraud—and even if a refusal by counsel to comply with a discovery request could *ever* constitute a RICO predicate act, those letters and those telephone calls bear no relation to any injury that Bakst alleges that he himself suffered. Rather, to the extent that Bakst is correct, these newer alleged acts of fraud injure not Bakst but the alleged victim of the earlier acts of fraud—the plaintiff. The refusal of the trustees to reveal to Bakst a fraud that they allegedly committed earlier against Joseph LeoGrande, Sr. cannot be said to injure Bakst himself in any way.

As stated by Justice Scalia in a not unrelated context: "Life is too short to pursue every human act to its most remote consequences...." *Holmes*, — U.S. at —, 112 S.Ct. at 1327 (Scalia, J., concurring in judgment). Because he does not allege predicate acts that proximately caused injury to him, Bakst utterly fails to state a valid claim under RICO.

Next, as indicated above, Bakst alleges that, in order to further and to conceal their other schemes of racketeering activity, the trustees "threatened" Bakst with involvement in this lawsuit and also refused to comply with Bakst's discovery requests. Although he did not plead it as such, Bakst apparently now believes that his allegations about threats from the trustees and from their attorneys set forth a claim that the trustees violated the Hobbs Act, 18 U.S.C. § 1951(a). Reply Memorandum of Bakst at 10–15. Bakst argues that the trustees "extorted" property from him—that is, essentially, that the trustees by their threats "extorted" the financial and emotional costs of this lawsuit. However, Bakst's contentions that the trustees committed Hobbs Act predicate acts are not grounded in his proposed pleading; rather, they are superimposed on that pleading by his responsive papers in this motion. Accordingly, his post hoc claim that his proposed pleading alleges that the defendants have violated Section 1951(a) does not conform to the dictates of Federal Rule of Civil Procedure 8(a); that is, Bakst fails by his proposed pleading to put the court and the trustees on notice as to the content of his RICO claim. Indeed, that Bakst never even mentioned the Hobbs Act until he reviewed the trustees' opposition papers—papers in which the trustees pointed out the grave defects in Bakst's RICO allegations—indicates that his drafting of that pleading was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."

---

**4.** Bakst contends that communications through the mail or over the wires that are not in themselves fraudulent but are intended to conceal earlier acts of fraud are nonetheless cognizable as violations of Section 1341 and of Section

1343. Whether or not Bakst is correct on this point is irrelevant: As demonstrated below, he does not have standing to assert that this alleged "cover-up" constitutes racketeering activity.

Finally, even if Bakst had pleaded that the conduct of the trustees and of their agents constituted a violation of the Hobbs Act, it is not altogether clear that he would have stated a cause of action. As indicated above, Bakst claims that the defendants' threats to name him as a party in this action were acts of "extortion" under Section 1951(a). Section 1951(b) defines "extortion" for purposes of the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right." Here, Bakst does not claim that the threats of the defendants were threats of "force" or of "violence." Nor does he contend that the trustees acted "under color of official right." Rather, Bakst argues that the threats of legal action induced in him "fear" of economic harm. The case law, however, indicates that threats of litigation may not constitute inducement of "fear" under the Hobbs Act. See, e.g., *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir.1984) (even bad faith threat of civil action does not constitute infliction of "fear" under Hobbs Act); *Peterson v. Philadelphia Stock Exchange*, 717 F.Supp. 332, 336 (E.D.Pa.1989) ("The ordinary resort to legal process does not rise to the level of a 'wrongful use' of force or fear" under Hobbs Act). But see *United States v. Sturm*, 870 F.2d 769, 774 (1st Cir.1989) (implying by hypothetical example that threat of litigation may constitute violation of Hobbs Act); *Hall American Center Associates Limited Partnership v. Dick*, 726 F.Supp. 1083, 1093–97 (E.D.Mich. 1989) (holding that, at least where part of extensive scheme of other extortionate activity, threat of litigation may constitute extortion under Hobbs Act). Thus, it is not clear that the acts alleged by Bakst here would amount to "extortion"—even if he had pleaded them as such.

The lack of standing to assert his RICO claims is only one of several deficiencies in Bakst's proposed RICO causes of action. For example, Bakst nowhere pleads—as plead he must under Section 1962(d)—that the trustees agreed to the commission of at least two predicate acts. Also, he does not indicate which defendants are alleged to have committed particular predicate acts, and he does not plead acts of mail fraud and of wire fraud—especially those that involve the discovery dispute—with particularity as required by Rule 9(b). Any one of these shortcomings would furnish a basis on which to dismiss the proposed pleading; thus, it is apparent that Bakst's proposed pleading is "futile" and that he must be denied leave to file and to serve it.

**B. Futility of the Proposed Abuse of Process Claim**

■ Under New York law, an action for abuse of process has three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). As to the first of these elements, however, "the institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Id.* at 116–17, 480 N.Y.S.2d 466, 469 N.E.2d 1324. Accordingly, "the filing of an answer and counterclaim" also is process that is " 'not ... capable of being abused.' " *PSI Metals v. Firemen's Insurance Company of Newark, New Jersey*, 839 F.2d 42, 43 (2d Cir.1988).

■ Bakst proposes to add to his pleading a claim against the defendants for the state law tort of abuse of process. Bakst claims that "Donald and Joe Jr.'s claims represent the use of legal process (against [inter alios] Allan Bakst) to accomplish unjustifiable and oppressive purposes for which they were not designed or intended to accomplish." Proposed Pleading ¶ 56. However, it is clear that this allegation fails to state a claim: He alleges that the *counterclaims* asserted against him by Donald LeoGrande and by Joseph Leo-Grande, Jr. "represent the [abuse] of legal process." But under *Curiano* and under *PSI Metals*, the filing of a counterclaim is not actionable for this tort.

Finally, Bakst in his reply papers on this motion has adopted the position that his

abuse of process claim is predicated not on the trustees' counterclaims against him but on the fact that the trustees compelled him to attend a deposition. Reply Memorandum of Bakst at 22. Whether or not this would state a cause of action for abuse of process, however, is entirely irrelevant: Bakst's proposed pleading alleges only that the trustees' *claims* against him constitute an abuse of process—and he may not, consistent with Rule 8(a), "amend" that proposed pleading by means of a memorandum of law. Again, that Bakst has submitted in his proposed pleading an allegation that is entirely without support in the law—an allegation that he seeks to recast after he has reviewed the defendants' opposition papers—demonstrates that Bakst did not undertake even the most cursory examination of the relevant legal principles before he drafted his proposed pleading. The court must deny Bakst's motion to add an abuse of process claim to his pleading.

### 2. *Motion for Sanctions*

█ The defendants have moved for sanctions under Federal Rule of Civil Procedure 11. That rule provides, inter alia, that a court "shall impose ... an appropriate sanction" for the filing of any papers that are "interposed for any improper purpose" (such as harassment, delay, or needlessly increasing the cost of litigation) or that state a position not "warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law." The defendants correctly recite the standard under that rule:

> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985) (emphasis in original). These defendants argue that "[a] cursory examination of the relevant authorities would have dispelled the possibility of a reasonable belief" that the positions advanced by Bakst in his proposed pleading were "warranted by existing law or by a good faith argument that the existing law should be extended, modified or reversed." *C.H. Sanders Co. v. BHAP Housing Development Fund Co.*, 750 F.Supp. 67, 70 (E.D.N.Y.1990). They further argue that Bakst's proposed pleading reveals "[o]n its face ... that Bakst is interposing [it] for an improper purpose." Memorandum of Defendants at 35. Accordingly, they seek sanctions against Bakst and against his co-counsel.

As indicated above, the RICO claims as advanced by Bakst are entirely without merit, and a "cursory examination of the relevant authorities" would have revealed this immediately. Indeed, it appears that a "cursory examination" of the defendants' opposition papers revealed to Bakst the frivolousness of much of his proposed pleading; accordingly, he immediately sought to revise his positions by means of reply papers. Bakst's own abandonment of exactly eight-ninths of his proposed pleading (the first seven of eight RICO schemes and the abuse of process claim) demonstrates that he had no reasonable basis on which to assert those claims.

Most of the racketeering acts that he alleges in his first three claims for relief do not even indirectly concern Bakst; rather, they allege fraud and embezzlement by the defendants to the detriment of other parties. Indeed, the only racketeering acts that Bakst alleges to have affected him constitute nothing more than a glorified discovery dispute. He does not even allege that these acts constitute fraud in themselves; rather, he claims that they were acts intended to conceal the frauds committed by the defendants against other parties. Similarly, Bakst has sought to claim an action against these defendants for abuse of process—even though his allegations are flatly foreclosed by decisions of the New York State Court of Appeals and of the Second Circuit. The defendants have stated well the essence of Bakst's proposed pleading: "Stripped of ... hyperbole, Bakst is really complaining that he

was made a party to this action and has had to defend himself." Reply Memorandum of Defendants at 9.

The court further finds that this amended pleading was interposed by Bakst for the improper purposes of harassing the defendants and of perpetuating acrimony in this action. Indeed, that Bakst has attempted to transform a dispute over discovery into part of a pattern of racketeering activity—when the Federal Rules of Civil Procedure clearly offered to Bakst (as to every civil litigant) means by which to seek immediate redress—is indicative of the malice and the bad faith that drive every paragraph of the proposed pleading. Such improper use of civil pleadings is plainly prohibited by Rule 11.

## CONCLUSION

For the reasons set forth above, the motion of Bakst to file an amended and supplemental pleading is denied; the motion of the defendants for sanctions against Bakst and his co-counsel, Douglas Good, is granted. As to the amount of the sanctions, counsel for the defendants shall detail the costs incurred in opposing this motion by means of an affidavit filed and served by September 4, 1992. Bakst and his co-counsel may challenge the amount of those costs by written submission filed and served by September 11, 1992.

SO ORDERED.